3:26-mj-00268

**DISTRICT OF OREGON, ss:** **AFFIDAVIT OF NATHAN HIBBS**

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Nathan Hibbs, being duly sworn, do hereby depose and state as follows:

**Introduction and Agent Background**

1. I am a Task Force Officer (TFO) for the Federal Bureau of Investigation and have a special deputation to investigate and enforce violations of Title 18 and Title 21 of the United States Code, which includes firearm and controlled substances offenses. I am a Police Detective employed by the City of Gresham Police Department, assigned as a criminal investigator to the Gresham Police Department (GPD) Investigations Division. I am a sworn police officer and have been for more than 20 years. I am currently assigned to the Multnomah County Sherriff's Office's (MCSO) Special Investigations Unit (SIU) investigating narcotics related crimes. I have conducted multiple investigations into weapons offenses and drug trafficking offenses. Through this training and experience, I have become familiar with the manner in which drug traffickers operate to carry out their criminal activity.

2. I submit this affidavit in support of a criminal complaint and arrest warrant for RALPH DONALD HILTON (**HILTON**), D.O.B. 02/xx/1983, for committing the felony offenses of:

a. Possession with Intent to Distribute 40 grams or more of a Mixture and Substance containing Fentanyl, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B); and,

///

b. Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1) and 924((a)(8) (hereinafter the Target Offenses).

As set forth below, there is probable cause to believe, and I do believe, that **HILTON** committed the Target Offenses.

## Applicable Law

3. 21 U.S.C. § 841(a)(1) makes it unlawful for any person to knowingly or intentionally possess with intent to distribute or distribute a controlled substance.

4. 18 U.S.C. § 922(g)(1) makes it unlawful for a person convicted of a crime punishable by imprisonment for a term exceeding one year to possess either ammunition or a firearm which has traveled in interstate or foreign commerce.

## Statement of Probable Cause

5. On August 7, 2026, as part of a drug investigation, Investigators were attempting to serve a federal arrest warrant on Steven Gill (GILL), a person affiliated with **HILTON**. Investigators received a phone call from a hotel in Portland, Oregon. The employee told investigators GILL had checked into a room at the hotel under the name "Ralph Hilton."

6. Later the same day Investigators attempted to arrest GILL in the parking garage at the hotel. GILL was observed meeting with people in and around the vehicle he was driving and a Honda Ridgeline, bearing Oregon license plate 857RDH that was parked next to his vehicle.

7. FBI SWAT attempted to arrest GILL on a federal arrest warrant; however GILL was able to elude capture by driving away in his vehicle. Investigators noted the doors to the Honda Ridgeline, which had been next to GILL's vehicle, had been left open and the vehicle was

left running. An Investigator checked a door in the parking garage that was near the Honda Ridgeline and saw it led to an elevator and stairwell. At the top of the stairs, within the stairwell, the investigator located two bags, one was a black sling type bag and the other a small Nike bag with a distinctive colorful logos on it. The bags appeared to be abandoned and were seized by the investigator. The investigator believed by weight and feel, that one of the bags contained a firearm.

8. I searched the bags and in the black sling type bag I located a semi-automatic Springfield Arms .40 Caliber handgun with a loaded magazine, as well as $1507 in U.S. currency. I collected DNA swabs from the firearm. The firearm was found to have been recently stolen in Portland, Oregon. I searched the Nike brand bag and found it contained five bags of suspected fentanyl powder. I later weighed and field tested the suspected fentanyl using a field test and saw it indicated positive for the presence of fentanyl, a Schedule II controlled substance. The fentanyl weighed approximately 117 grams.

9. Also inside the Nike bag were three bags of suspected methamphetamine and lose suspected methamphetamine in the bottom of the bag, as well as a digital scale. I later weighed the methamphetamine and saw it weighed 12.3 gross grams the suspected methamphetamine also tested positive for methamphetamine, a Schedule II controlled substance. I have found such field tests to be reliable with subsequent forensic analysis repeatedly confirming the results

10. I later obtained and reviewed surveillance camera footage from the hotel for a time prior to when GILL eluded capture. In reviewing the footage of the video I observed both **HILTON** and GILL together in the parking garage. GILL's vehicle and the Honda Ridgeline are parked next to each other. Both **HILTON** and GILL are observed interacting and then **HILTON** is observed getting in and out of the Honda Ridgeline. **HILTON** can be seen wearing both the

black bag that the Springfield handgun was later recovered from, as well as the small Nike bag. **HILTON** and GILL then disappear into the interior of the hotel. About an hour later both **HILTON** and GILL reappear. **HILTON** can again be seen carrying both the black sling bag and the Nike brand bag. GILL is observed sitting inside his vehicle, a Jaguar, and then rapidly driving away as the law enforcement flashbangs were deployed as the FBI attempted to arrest him. **HILTON** is seen rummaging in the Honda Ridgeline and then running toward the door leading into the stairwell where the two bags were recovered a short time later. When **HILTON** is running towards and through the doorway leading into the stairwell he is carrying the Nike bag and has the black sling bag hung across his body. There is no camera in the stairwell.

11. The elevator that leads to the lobby is in the stairwell where **HILTON** ran into. After reviewing the different camera angles there are several images showing **HILTON 's** face and distinguishing features. I viewed the lobby camera and observed **HILTON** subsequently exit the elevator in the lobby and at this point he no longer has the black sling bag or the Nike bag. The image below is a still photo from the surveillance photo of **HILTON** with both bags and the contents of those bags when searched.








12. The Honda was found to be registered to EAN Holdings, a car rental company. An FBI administrative subpoena was served on EAN, and the car was found to have been rented by **HILTON** on August 7, 2026, and was scheduled to be returned August 14, 2026.

13. I reviewed **HILTON's** criminal history and learned that in September 2013, following his federal conviction in the United States District Court for Possession of Methamphetamine with Intent to Distribute and Possession of a Firearm in Furtherance of Drug Trafficking, he was sentenced to 96 months' imprisonment, to be followed by three years of supervised release. **HILTON** also has multiple state prison sentences that exceeded one year in length.

14. I know Springfield handguns are not manufactured within the State of Oregon and thus the firearm traveled in interstate commerce prior to arriving here.

15. I know that fentanyl is a Schedule II controlled substance and an extremely powerful synthetic opioid that is approximately 100 times more potent than morphine and 50 times more potent than heroin. I know that 2 mg. of fentanyl can be a potentially fatal dose. I

know that fentanyl traffickers regularly buy and sell bulk fentanyl pills (counterfeit M30 pills manufactured with fentanyl), as well as bulk fentanyl powder. I know a typical user of fentanyl will either buy powdered fentanyl or counterfeit M30 pills that they will then burn it on a piece of tin foil and inhale the fumes, sometimes by using a straw. Sometimes a user will simply ingest the pills or inhale the powdered fentanyl. I know that fentanyl addicts on the street do not regularly stockpile large amounts of fentanyl but rather tend to buy a small amount of what they need and then resupply themselves when they run out. I know that a user of powdered fentanyl will use it in quantities of less than 1/10 of a gram and will regularly buy it in amounts of less than a gram up to several grams at a time. I know that dealers of powdered fentanyl will often buy fentanyl in larger quantities and then break off and sell it in smaller qualities. I know that a person possessing over 10 grams of fentanyl powder does not possess the fentanyl for personal use but rather such a quantity indicates that it is possessed for purposes of further distribution.

16. I will also note that scales, such as the ones found in **HILTON's** bag are regularly used by drug dealers to weigh their drugs for sale, since weights of drugs correspond to specific prices for drugs.

## Conclusion

17. Based on the foregoing, I have probable cause to believe, and I do believe, that **HILTON** committed the Target Offenses and I therefore request that the Court issue a criminal complaint and arrest warrant for **HILTON** for committing those offenses.

///

///

///

18. Prior to being submitted to the Court, this affidavit, the accompanying complaint and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Scott Kerin, and AUSA Kerin advised me that in his opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

*By phone pursuant to Fed R. Crim. P. 4.1*
Nathan Hibbs, Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at 3:40 pm on ~~September 30~~, 2026. October 1, 2026.

Jolie A. Russo
HONORABLE JOLIE A. RUSSO
UNITED STATES MAGISTRATE JUDGE